**NAACP, BOSTON CHAPTER, Plaintiff,**

v.

**Samuel R. PIERCE, Jr., Secretary of Housing and Urban Development, et al., Defendants.**

Civ. A. No. 78–850–S.

United States District Court,
D. Massachusetts.

Dec. 31, 1985.

Edward Barhsak, Sugarman, Rogers, Barshak & Cohen, Boston, Mass., Michael Sussman, NAACP Special Contr. Fund, Brooklyn, N.Y., for plaintiff.

Anthony J. Ciccone, HUD, Washington, D.C., Melissa Jad, Stephen Kaye, City of Boston Law Dept., Richard Welch, III, Asst. U.S. Atty., Kathy Machan, HUD, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

SKINNER, District Judge.

In this action plaintiff, the National Association for the Advancement of Colored People, Boston Chapter ("NAACP"), claimed that the Secretary of the Department of Housing and Urban Development and the local administrators of the Department (hereinafter collectively referred to as "HUD") had failed to take measures mandated by various statutes and the Constitution of the United States to prevent racial discrimination and promote fair housing in the administration of federal grants to the City of Boston ("the City"). I made findings and conclusions of fact and rulings of law after a trial on the merits of plaintiff's claims against HUD. 567 F.Supp. 637 (D.Mass.1983). All findings, conclusions and rulings contained therein are hereby incorporated and restated herein.

In summary, I concluded that HUD itself did not intentionally discriminate in administering its programs and that the evidence did not warrant a finding that HUD financed City programs that were either intentionally discriminatory or had a discriminatory impact. Consequently, I found no violations of § 109 of Title I of the Housing and Community Development Act of 1974 (42 U.S.C. § 5309), § 601 of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) or the Fifth Amendment to the Constitution.

However, I did find that HUD was violating its own regulations by failing to condition receipt by the City of CDBG funds on preparation of a Community Development and Housing Plan identifying the "special needs" of the lower income population. 24 C.F.R. § 570.300(b). This failure was found seriously to impede HUD in carrying out its statutory mandate under Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 et seq.) ("Title VIII" or the "Fair Housing Act") to promote fair housing in

all federally financed projects. This issue is no longer in the case, however, because the City did submit to HUD a 180-page minority needs assessment on September 7, 1982, and HUD is no longer in violation of its own regulations.

I found that HUD's mandate under Title VIII, to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter", 42 U.S.C. § 3608(d)(5), requires effective fair housing enforcement. *Shannon v. HUD*, 436 F.2d 809 (3rd Cir.1970); *Garrett v. City of Hamtramck*, 503 F.2d 1236 (6th Cir.1974). I found that HUD did not satisfy the minimum levels of compliance required by this section in two respects. First, it had not required the City to establish an effective fair housing enforcement program in the face of knowledge of pervasive racial discrimination in the City. Second, HUD had knowledge that there was and is a housing emergency in the City of Boston which had a disproportionate impact on low income black families and nevertheless did not condition its UDAG grants on the construction of low income housing.

I noted in the opinion that it was "extremely difficult to quantify HUD *legal* obligations" under these statutes. The nature of these legal obligations is being challenged in this motion. HUD requests the court to dismiss this action for lack of jurisdiction. Based on the violations found, HUD argues that: (1) HUD has cured its violation of its own regulations because the City has submitted a Community Development Housing Plan; (2) plaintiff has eschewed reliance on the Administrative Procedure Act ("APA") as a basis for judicial review of HUD's actions; (3) sovereign immunity bars plaintiff's suit; and (4) plaintiff has no right of action against HUD under Title VIII.

## A. RIGHT OF ACTION OTHER THAN UNDER THE APA

1. *Lack of Jurisdiction.*

■ It is well settled that no action will lie against an agency of the United States unless sovereign immunity has been waived either expressly or by clear implication. Absence of waiver goes to the subject matter jurisdiction of the court and may be raised at any time by a party or by the court. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *see generally* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3654–5. The only surviving claim in the present action is one under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3608(d), which does not contain an express waiver of sovereign immunity. The defendants correctly state that the waivers of sovereign immunity found in 42 U.S.C. § 1404a and 12 U.S.C. § 1702 do not apply to this case. The analysis found in the numerous cases cited by the defendants would lead to the conclusion that sovereign immunity has not been waived. The defendants' memorandum fails to account for the Supreme Court's opinion in *Hills v. Gautreaux*, 425 U.S. 284, 301–06, 96 S.Ct. 1538, 1548–50, 47 L.Ed.2d 792 (1976), however.

In *Hills v. Gautreaux*, the Supreme Court ruled that the district court had the authority to require HUD to carry out the duties mandated by Title VI of the Civil Rights Act of 1964 and Title VIII of the Civil Rights Act of 1968. 425 U.S. at 301–06, 96 S.Ct. at 1548–50. The district court had originally granted HUD's motion to dismiss for lack of jurisdiction. 425 U.S. at 289, 96 S.Ct. at 1542. The court of appeals reversed. The Supreme Court affirmed the judgment of the court of appeals without discussion of jurisdiction or waiver of sovereign immunity.

The opinion contains neither analysis nor discussion of subject matter jurisdiction or sovereign immunity. The issue of subject matter jurisdiction had been raised in the case, however, and could hardly have been ignored. The case must stand for the proposition that subject matter jurisdiction exists in the federal courts to require HUD to carry out the mandates of Title VI of the Civil Rights Act of 1964 and Title VIII of

the Civil Rights Act of 1968, specifically 42 U.S.C. § 3608(d), even though no analytical basis for the exercise of jurisdiction is apparent in the opinion. It is true, of course, that in *Hills v. Gautreaux* the Court found that HUD itself had participated in a discriminatory housing program. The significance of that fact, however, was that it provided a basis for a remedy cutting across municipal lines, distinguishing that case from *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). 425 U.S. at 297, 96 S.Ct. at 1546. It would seem to have no bearing on the issue of whether sovereign immunity is waived for claims against HUD under Title VI and Title VIII.

In summary, there has been no explicit waiver of sovereign immunity by Congress which would govern this case. The application of traditional analysis would lead to the conclusion that there had been no waiver of sovereign immunity and hence no subject matter jurisdiction. *Hills v. Gautreaux,* however, implicitly holds that jurisdiction exists to require HUD to carry out the mandate of Title VIII of the Civil Rights Act of 1968, even though no analytical basis for the exercise of jurisdiction appears in the opinion. Accordingly, insofar as the defendants' motion seeks dismissal on the basis of lack of subject matter jurisdiction, it is denied.

2. *Implied Right of Action Under Title VIII.*

█ HUD argues that plaintiff may not maintain this action because there is no implied private right of action under Title VIII. As discussed above, I found that HUD had not fulfilled its duty to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter". 42 U.S.C. § 3608(d)(5). The question is whether private relief against HUD is available for violations of this section. Both parties agree that there is no express statutory private right of action against HUD.

A challenge to the existence of a private right of action, unlike the issue of sovereign immunity, does not implicate subject matter jurisdiction but challenges the existence of a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The same issues also may be reviewed at the close of the evidence by a motion under Fed.R. Civ.P. 12(h)(2). The defendants raise it now after I have already made findings of fact on the issue of liability, when the only issue remaining is whether the court should order injunctive relief, or alternately appoint a special master for the purpose of fashioning appropriate injunctive relief. Accordingly, I shall treat this motion as being limited to the context in which it is raised and consider only the narrow issue of whether there is an implicit private right of action under 42 U.S.C. § 3608(d)(5) to secure injunctive relief.

Plaintiff first asserts that the court of appeals decision on the standing issues in this suit constitutes approval of its theory that a private right of action under Title VIII exists because the opinion does not tie the decision on the standing of the parties to the APA. *See N.A.A.C.P. Boston Chapter v. Harris*, 607 F.2d 514, 517 n. 4, 519 (1st Cir.1979). That decision involved the standing of particular parties to contest UDAG grants on a number of different grounds. The issue of a private right of action under Title VIII was not presented to or considered by the court nor was resolution of this issue necessary to its decision.[1] The court of appeals has often reminded us not to read into its opinions views on issues not expressly placed before it.

The cases which plaintiff asserts assume a private right of action under Title VIII primarily concern the situation in which local or state entities have taken discriminatory actions in violation of the Constitution, which is not the case here. The cases indicate only that HUD might be held liable where it is aware of a grantee's discriminatory practices and makes no effort to force

---

**1.** In contrast to the issue of subject matter jurisdiction in *Hills v. Gautreaux, supra.*

the grantee into compliance by terminating funding. *Anderson v. City of Alpharetta, Ga.*, 737 F.2d 1530, 1536–37 (11th Cir.1984); *see, e.g., Garrett v. City of Hamtramck*, 503 F.2d 1236, 1247 (6th Cir.1974); *Resident Advisory Bd. v. Rizzo*, 425 F.Supp. 987, 1021 (E.D.Pa.1976) (noting HUD's duty to further construction), *aff'd*, 564 F.2d 126 (3d Cir.1977), *cert. denied sub nom. Whitman Area Improv. Council v. Resident Advisory Bd.*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978); *but see Otero v. New York City Housing Authority*, 354 F.Supp. 941, 957 & n. 18 (S.D.N.Y.) (dismissing claims against HUD), *rev'd on other grounds*, 484 F.2d 1122 (2d Cir.1973); *Crow v. Brown*, 332 F.Supp. 382, 395 (N.D. Ga.1971) (not granting relief against HUD), *aff'd*, 457 F.2d 788 (5th Cir.1972).

The leading case of *Shannon v. United States Dep. of Housing and Urban Dev.*, 436 F.2d 809 (3rd Cir.1970), permitted a private right of action against HUD. Whether this was an implied right of action under Title VIII or under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, is not strictly clear. Although the opinion in general speaks of relevant factors under the APA, it appears to authorize relief which would go beyond that authorized by the APA. Other courts have concluded that review of the Secretary's decisions under Title VIII is available only under the APA. *E.g., Alschuler v. Dept. of Housing & Urban Development*, 686 F.2d 472, 481 (7th Cir.1982); *Little Earth of United Tribes v. U.S. Dept. of Housing*, 584 F.Supp. 1292, 1296 (D.Minn. 1983); *King v. Harris*, 464 F.Supp. 827, 836–37 (E.D.N.Y.) *aff'd w/o op.*, 636 F.2d 1202 (2d Cir.1980); *see Clients Council v. Pierce*, 711 F.2d 1406, 1425 (8th Cir.1983) (citing *Alschuler*).

In any case, since 1975, federal courts have not been free to assume an implied private right of action under federal statutes or to indulge in the ambiguity of the *Shannon* opinion. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court stated that the existence of an implied private right of action must be determined in accordance with the following test:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (emphasis in original) (citations omitted).

In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Court made it clear that "before concluding that Congress intended to make a remedy available to a special class of litigants, a court must carefully analyze the four factors that *Cort* identifies as indicative of such an intent". *Id.* 441 U.S. at 688, 99 S.Ct. at 1953. The focus of the analysis must be on the intent of Congress. *See, e.g., Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979).

The first factor under *Cort* is whether the statute was enacted for the benefit of a special class of which plaintiff is a member. Section 3608(d)(5) does not identify the class, if any, which Congress intended to benefit; instead, the statute places an affirmative duty on the Secretary without reference to any beneficiaries. The Supreme Court noted the importance of this distinction in *Cannon*, 441 U.S. at 690–93, 99 S.Ct. at 1954–56:

> There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the

benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory conduct.

The Court contrasted Title IX's focus on the benefited class with rejected language which would have made the anti-discrimination aspect of Title IX "a simple directive to the Secretary of HEW". *Id.* at 693 n. 14, 99 S.Ct. at 1955–56 n. 14. While the affirmative duty imposed on the Secretary by § 3608(d)(5) may be more than a "simple directive", it is a duty imposed by language which does not specifically indicate any special class of intended beneficiaries. The fact that "the whole community" is the victim of discriminatory housing practices does not help plaintiff. *See Trafficante v. Metropolitan Life Ins.*, 409 U.S. 205, 211, 93 S.Ct. 364, 367–68, 34 L.Ed.2d 415 (1972), quoting 114 Cong.Rec. 2706 (remarks of Senator Javits). Of course, it is not a very great leap to conclude that by pressing for fair housing Congress intended to benefit the victims of discriminatory housing, low income minorities, i.e., the very constituency which gives the plaintiff its standing in this action. Nevertheless, the unfocused cast of the language in § 3608(d)(5) is sufficiently different from that construed in *Cannon* to distinguish this case and lead to the conclusion that Congress intended only a very general admonition to HUD and not the creation of a private right of action.

The second of the factors identified in *Cort,* whether there is any indication of legislative intent to create a remedy or to deny one, has assumed increasing importance over the years. "Unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981). The language of § 3608(d)(5) is silent on the issue. Because Title VIII was offered as a floor amendment to the Civil Rights Act of 1968 by Senators Mondale and Brooke, neither the House nor Senate Reports contain any explicit discussion of Title VIII. *See* H.R.Rep. No. 473, 90th Cong., 1st Sess.; S.Rep. No. 721, 90th Cong., 1st Sess. (1967), *reprinted in* 1968 U.S.Code Cong. & Ad.News 1837.

Review of the Congressional Record reveals only that the sponsors of the Fair Housing Act sought to require federal housing administrators to consider the impact of their funding decisions upon the racial composition of affected areas. *See* 114 Cong.Rec. 2278 (1968) (remarks of Senator Mondale); *id.* at 2281 (remarks of Senator Brooke); *see also Anderson v. City of Alpharetta, Ga.,* 737 F.2d at 1535; *Otero v. New York City Housing Authority,* 484 F.2d 1122, 1133–34 (2d Cir.1973). The cited passages indicate that Senators Mondale and Brooke were concerned that the United States government was a covert "collaborator" in discrimination or "sanctioned" discrimination in housing. The purpose of § 3608(d)(5) was to correct this situation. The Congressional Record provides no evidence of an intent to allow private actions against HUD.

The only evidence of congressional intent concerning the issue of private suits to review HUD's actions under Title VIII is contained in "questions and answers describing the fair housing amendment" which were ordered to be printed in the Congressional Record at the request of Senator Mondale:

> Will persons who disagree with the Department of Housing and Urban Development's interpretation of the Act have any recourse?

> All orders of the Department will be subject to review by the Federal courts. In addition, *the Department will be subject to the provisions of the Administrative Procedure Act in all its operations under the Fair Housing Act.*

114 Cong.Rec. 2273 (emphasis added). The orders referred to in this answer are the cease and desist orders and temporary restraining orders the Secretary was empowered to issue under the original enforce-

ment provisions of the Fair Housing Act as submitted by Senators Mondale and Brooke. *See* 114 Cong.Rec. 2271. These provisions were later deleted. The bill's Senate sponsors, and by implication Congress, intended HUD's operations under Title VIII to be reviewed under the APA where applicable. No broader intention can be inferred from this language.

Analysis of the statutory scheme is equally unproductive. Title VIII makes it unlawful to discriminate in the sale, rental, financing or brokerage of housing. 42 U.S.C. §§ 3604–3606. The statute sets out two methods by which a person aggrieved by discriminatory housing practices may seek to enforce these provisions. Under 42 U.S.C. § 3610(a)-(c), the aggrieved person may file a complaint with the Secretary. The Secretary will investigate and attempt to resolve the matter or refer it to a state or local fair housing agency. The complainant may file a civil suit if voluntary compliance is not obtained within thirty days. § 3610(d). The section only provides for suit "against the respondent named in the complaint", a category which would not include HUD.

Alternatively, under 42 U.S.C. § 3612, a private person may file a civil action in federal district court to enforce rights against discrimination in the sale, rental, financing or brokerage of housing granted by §§ 3603, 3604, 3605 and 3606. The absence of § 3608 from this list of sections providing the basis for a civil action suggests that Congress did not intend a private right of action against HUD under § 3608. Title VIII also provides that the Attorney General may bring suit to challenge a "pattern or practice" of discrimination. § 3613. In view of the express provisions for private and governmental enforcement of the duties imposed on both the public and local or state governments by §§ 3603–3606, it is unlikely that "Congress absentmindedly forgot to mention an intended private action". *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. at 20, 100 S.Ct. at 247, quoting *Cannon v. University of Chicago,* 441 U.S.

at 742, 99 S.Ct. at 1981 (Powell, J., dissenting).

I conclude that there is no evidence in the statutory scheme of a congressional intent to provide a private right of action against HUD under Title VIII. Indeed, such evidence as there is strongly suggests that Congress did not intend to create such a right of action.

The third factor identified in *Cort* is whether the existence of a private right of action is consistent with the underlying purposes of the legislative scheme. I suppose that private rights of action are consistent in one sense in that they necessarily provide yet another layer of enforcement. On the other hand, Senator Mondale's summary of the proposed fair housing amendment states that "Responsibility for administration and enforcement would rest with the Secretary of Housing and Urban Development". In *Anderson v. City of Alpharetta, Ga.,* 737 F.2d 1530, the court held that there was no private right of action to enforce HUD's generalized affirmative duty under § 3608(d)(5). By way of *dicta,* the court said that HUD could be held liable under § 3608(d)(5) when HUD had taken discriminatory action itself and when it knew of discriminatory action by a client agency and made no effort to enforce compliance with the Fair Housing Act by cutting off federal financing, citing *Client's Council v. Pierce,* 711 F.2d 1406 at 1422-3. It is not clear, however, whether the court in *Anderson* or the court in *Client's Council* is referring to a private right of action implicit in Title VIII or action under the APA for abuse of discretion, discussed hereinafter. The facts in this case relieve me from the necessity of deciding whether HUD would be liable in the situations suggested by this *dictum.* However, the holding of *Anderson* appears to be squarely on point. I conclude that an implied private right of action under 3608(d)(5) is not consistent with the purpose of the Act to place responsibility for enforcement squarely on the Secretary of Housing and Urban Development.

This conclusion is consistent with *Hills v. Gautreaux, supra,* and my ruling on subject matter jurisdiction. The Court in *Hills v. Gautreaux* did not explicitly consider the issue of whether there was an implied right of action against HUD under Title VIII. Furthermore, a determination of the issue is not necessarily implicit in the judgment because it was not essential thereto. The existence of a private right of action goes to the sufficiency of the complaint to state a claim upon which relief may be granted, not to subject matter jurisdiction, and the issue is generally waived if not timely presented. The issue apparently was never presented in *Hills v. Gautreaux.*

## B. REVIEWABILITY UNDER THE APA

■ The parties agree that if the APA is applicable, it supplies both the necessary waiver of sovereign immunity and a statutory private right of action.

As a preliminary matter, HUD argues that plaintiff has rejected reliance on the APA as the basis for this court's power to review HUD's actions. Quoting a section of plaintiff's Memorandum in Support of its Proposed Form of Judgment and in Opposition to Defendant's Form of Judgment in which plaintiff states "NAACP has never grounded this action on the APA", HUD contends that plaintiff cannot now rely on the APA and the court should therefore dismiss the action. Plaintiff responds that it has not waived the APA as a basis for its claim that HUD violated Title VIII and that its failure to cite the APA in its complaint can have no effect on the court's ability to review HUD's actions.

If relief is in fact available under the APA there would be no problem in amending the complaint or deeming it amended for present purposes. Fed.R.Civ.P. 15. *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1105 (8th Cir.1973) (quoting *Sikora v. Brenner,* 379 F.2d 134, 136 (D.C.Cir.1967)); *see also Angleton v. Pierce,* 574 F.Supp. 719, 728 (D.N.J.1983) *aff'd w/o op.,* 734 F.2d 3 (3rd Cir.1984),

*cert. denied* —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984).

Treating the complaint as so amended, I must next consider the reviewability of HUD's violation of Title VIII under the APA. HUD argues that the court can only proscribe specific agency actions found to be "an abuse of discretion", citing 5 U.S.C. § 706(2)(A). Plaintiff argues that the court must "compel agency action unlawfully withheld or unreasonably delayed", citing 5 U.S.C. § 706(1).

There is a threshold question of applicability of the APA which the parties have not argued, however. Section 701(a) of 5 U.S.C. provides that:

> (a) This chapter applies, according to the provisions thereof, except to the extent that
>
> (1) statutes preclude judicial review; or
>
> (2) agency action is committed to agency discretion by law.

Title VIII's affirmative duty provision, § 3608(d)(5), does not explicitly preclude judicial review. Is HUD's level of activity under § 3608(d)(5) "committed to agency discretion by law"?

The Supreme Court has narrowly interpreted this exception to judicial review under the APA. In *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971), the Court stated that the exception applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply".

Prior to the Supreme Court's decision in *Overton Park,* our court of appeals had developed an analytical framework for determining whether an agency action is committed to agency discretion by law. In *Hahn v. Gottlieb,* 430 F.2d 1243 (1st Cir. 1970), the court considered whether tenants in housing subsidized under the National Housing Act had a right to review under the APA of the Federal Housing Administration's decision to grant rent increases. The court approached the issue recognizing "a strong presumption in favor of review,

which is overcome only by 'clear and convincing evidence' that Congress intended to cut off review above the agency level", which may be identified by the following criteria:

> [E]vidence may ... be drawn not only from explicit language, but also from a statute's purpose and design.... In the absence of a clear declaration of congressional intent, three factors seem to us determinative: first, the appropriateness of the issues raised for review by the courts; second, the need for judicial supervision to safeguard the interests of the plaintiffs; and third, the impact of review on the effectiveness of the agency in carrying out its assigned role.

*Id* at 1249. (citations omitted). Applying these guidelines to the facts in *Hahn,* the court concluded that the broad statutory grant of authority to the Secretary of Housing and Urban Development under the National Housing Act signified that Congress intended the agency's actions pursuant to this authority to be "committed to agency discretion" within the meaning of 5 U.S.C. § 701(a)(2).

Our court of appeals has recognized that the Supreme Court's decision in *Overton Park* limited the exception for matters "committed to agency discretion". *Adams Nursing Home, Inc. v. Mathews,* 548 F.2d 1077, 1079 n. 5 (1st Cir.1977). However, the court of appeals and other courts continue to cite *Hahn* and to employ its analytical framework when considering the exception. *See, e.g., Dugan v. Ramsay,* 727 F.2d 192, 195 (1st Cir.1984); *Munoz-Mendoza v. Pierce,* 711 F.2d 421, 430 (1st Cir.1983); *Colon v. Carter,* 633 F.2d 964, 966–67 (1st Cir.1980); *Natural Resources Defense Council, Inc. v. S.E.C.,* 606 F.2d 1031, 1043–44 (D.C.Cir.1979); *S.G.A. Financial Corp. v. United States Small Business Administration,* 509 F.Supp. 392, 398 (D.N.J.1981).

In one of the above cited cases, the court of appeals raised the issue of whether agency actions very similar to those requested by plaintiff in the instant case are committed to agency discretion under 5 U.S.C. § 701(a)(2). In *Munoz-Mendoza, supra,* minority residents of Boston brought suit seeking judicial review of HUD's decision to grant $19 million to the City for the development of the Copley Place commercial complex. The court's opinion dealt principally with the standing of various plaintiffs in the action. The case was remanded to the district court for further proceedings. The court took the opportunity to offer the parties and the district court guidance on several of the outstanding issues, however. The court stated that the case "in essence is a challenge to federal administrative action of the sort typically governed by the Administrative Procedure Act". *Id.* at 429. The court concluded that the case presented several difficult issues, one of which was that plaintiffs, on remand,

> must ... show that Congress intended the courts, at the risk of interrupting or seriously delaying multi-million dollar projects aimed at helping distressed areas, to review agency "study" decisions *of the sort at issue here* in order to correct the type of abuse of discretion that the plaintiffs here allege. *See* 5 U.S.C. § 701(a)(2); *Hahn v. Gottlieb,* 430 F.2d 1243 (1st Cir.1970).

*Id.* at 430 (emphasis in original).

Although the quoted language is *dictum,* the court not only reaffirmed the vitality of *Hahn,* but also suggested that the *Hahn* analysis is appropriately employed in considering judicial reviewability of HUD's actions in administering federal grant programs.

Accordingly, I turn to the *Hahn* analytical framework in an attempt to determine whether agency action to carry out HUD's affirmative duty to promote fair housing under 42 U.S.C. 3608(d)(5) is "committed to agency discretion" under 5 U.S.C. § 701(a)(2).

I note initially that Congress has not explicitly evidenced in the Fair Housing Act an intent to cut off review of HUD's actions under § 3608(d)(5) above the agency level. Since there is no declaration of

congressional intent a consideration of the three "determinative factors" is necessary.

### 1. *Appropriateness of Issues for Judicial Review.*

In considering whether the issues in the *Hahn* case were appropriate for judicial review, the court of appeals began by noting that the courts are "ill-equipped to superintend economic and managerial issues" of the kind at issue in that case. 430 F.2d at 1249. The court implied that cases which can be resolved by "judicial application of canons of statutory construction" are appropriate for judicial review. *Id.,* (citing *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970)). This standard is similar to the Supreme Court's declaration that the exception to judicial review applies only when in "a given case there is no law to apply". 401 U.S. at 410.

Applying these standards to this case, I conclude that a review of HUD's failure affirmatively to promote fair housing would require the kind of supervision over economic and managerial issues that the court of appeals in *Hahn* suggested the courts are ill-equipped to perform. This is particularly true where I have found the deficiency to consist of failure to promote the construction of sufficient additional low-income housing to make enforcement of fair housing practicable. Whether the choice is publicly financed housing, or one of an infinite range of public-private financial partnerships or private financing plus rent subsidies, successful low-income housing is the result of the careful resolution of many fluid and dynamic factors: economics, demography, neighborhood support, ethnic cohesiveness and, last but no means least, local politics. One need not be a social historian to recognize that much well-intentioned public housing has proven disastrous. The public, and the plaintiff's constituents are best served when the housing program is well-researched, well-staffed and well-managed on a daily basis. This a court cannot do. It cannot frame an order to HUD with sufficient specificity to be effectively enforced. It can do little more than admonish the agency in general terms to comply with the statute.

The plaintiff has suggested that these problems can be solved by the appointment of a special master. This has indeed been successful where there is a discrete managerial problem, such as the supervision of the Rhode Island state pentitentiary at Howard, or the receivership of the Boston Housing Authority. Special masters have been of assistance to courts in attacking a specific evil, such as school desegregation. In this amorphous situation, however, the master still must approach the problem from but one point of view, without the benefit of expert staffing. Adversary advocacy is not likely to be an adequate substitute. The court should not set up a super-HUD to monitor HUD.

I note with interest that within the last two weeks two of the housing projects most urgently espoused by the plaintiff, Tent City and Columbia Point, have received the necessary financing through the political interaction of HUD, the City and housing financing agencies of the Commonwealth of Massachusetts. The laying on of the court's heavy hand was neither necessary nor desirable.

I conclude that application of the first test under *Hahn* weighs heavily against judicial review.

### 2. *Need for Review to Safeguard Plaintiff's Interests.*

Plaintiff's interests in fair housing are of the highest order. As in *Hahn*, the constituents plaintiff represents have limited choices and generally weak bargaining power. *Id.* at 1250. Plaintiff has an interest in insuring that there is an adequate supply of desegregated housing to give minority families a true choice. Plaintiff should be able to expect that HUD will heed the congressional order in Title VIII to act affirmatively to promote integrated housing, but if HUD fails there is indeed a need for review. This aspect of the analysis weighs in favor of review.

3. *Impact of Review on Agency Effectiveness.*

Judicial review of the day-to-day operations of large institutional bureaucracies has occasionally been highly successful, as noted above. However, a judicial determination of what HUD is required to do affirmatively to further fair housing policy would involve many of the same "essentially managerial decisions" that were required in *Hahn. Id.* There, the court of appeals felt that the values of informality and flexibility would be impinged upon by judicial review. *Id.*

In this case judicial review would impinge even more fundamentally on agency decision-making processes. For essentially the same reason I have mentioned under the rubric of appropriateness virtually every aspect of the agency's research and negotiation would be subject to judicial monitoring, a condition likely to reduce the efficiency of the agency to near zero.

In summary, the inappropriateness of judicial review of the issues in this case, and the likely negative impact on the effectiveness of the agency's operations outweigh the admittedly substantial need to safeguard plaintiff's interests in fair housing. In light of this balance, and the Supreme Court's characterization of the exception for matters "committed to agency discretion" as applicable to situations in which "there is no law to apply", 401 U.S. at 410, I conclude that HUD's actions under § 3608(d)(5) are excepted from judicial review.

One final issue remains. The court of appeals has recently indicated that even if agency action is "committed to agency discretion" the federal courts have power to review for abuses of discretion. *Cruz v. Brock, Secretary of Labor of the United States,* 778 F.2d 62, at 63 (1st Cir.1985) (*citing* K. Davis, *Administrative Law Treatise* § 28.7 (1984)). I conclude that my prior findings preclude review for abuse of discretion. Review for "abuse of discretion" under the APA standard is only possible when specific agency actions are challenged. 737 F.2d at 1534. As in *Ander-son, supra,* I did not find that HUD acted wrongly with respect to any particular decision it made, but instead that HUD generally failed to act affirmatively to promote fair housing.

In summary, the only statutory violation HUD committed which has not been cured was of Title VIII, a statute under which there is no private right of action against HUD. The violated statutory provision requires HUD to take actions that are committed to agency discretion by law under the APA.

### ORDER FOR JUDGMENT

I conclude that (1) the plaintiff has no implicit private right of action under 42 U.S.C. § 3608(d)(5), and (2) that review under the APA is not available to redress HUD's failure to take affirmative action to promote fair housing under § 3608(d)(5). The defendant HUD's motion to dismiss is ALLOWED. I order judgment of dismissal to be entered forthwith.